## WILLIAMS v LANSING BOARD OF EDUCATION

1. SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL LAW—STATUTES —EQUAL PROTECTION—SCHOOL BOARDS—PROPERTY OWNERS.

    A statute which restricts membership on a board of education to persons who own property assessed for taxes in the school district is a classification which is irrelevant to the valid objectives of the capability or educational concern of a prospective board member, and thereby is unconstitutional as violative of equal protection of the laws (US Const, Am XIV, MCLA 340.492; MSA 15.3492).

2. QUO WARRANTO—TITLE TO OFFICE—EXCLUSIVE REMEDY.

    A proceeding in the nature of quo warranto is the exclusive remedy to try title to office.

3. PLEADING—FORM OF PLEADING—SUBSTANCE OF CLAIM—COURT RULES.

    The fact that a claimant has mislabeled or misapprehended his remedy should not bar relief if merited; the court rule which abolishes technical forms of pleading provides that the rules shall be construed and enforced to secure a just, speedy, and inexpensive determination of all controversies on their merits (GCR 1963, 110.3).

4. QUO WARRANTO—COURTS—JURISDICTION—STATE OFFICERS—COURT RULES.

    A proceeding in the nature of quo warranto pertaining to a state officer must be brought in the Court of Appeals, but any other quo warranto proceeding must originate in the circuit court (GCR 1963, 715.1).

5. QUO WARRANTO—MANDAMUS—COURTS—JURISDICTION—STATE OFFICERS.

    The common-law power of the circuit courts to issue extraordi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Schools § 38.
[2] 65 Am Jur 2d, Quo Warranto § 18 *et seq.*
    68 Am Jur 2d, Schools § 45.
[3] 61 Am Jur 2d, Pleading §§ 57–67.
[4–6] 65 Am Jur 2d, Quo Warranto §§ 49–53, 127.

nary writs such as mandamus and quo warranto has been withheld from the circuit courts in matters involving state officers for two reasons: (1) to place in the higher court for expeditious hearing those questions of sovereign prerogative or the interest of the state in general, and (2) to avoid inconvenience in the administration of state government by permitting trial of such questions at the seat of government where most state offices and departments are located.

6. SCHOOLS AND SCHOOL DISTRICTS—STATE AGENCY—LOCAL AGENCY— SCHOOL BOARD MEMBERS—STATE OFFICERS—QUO WARRANTO— COURT RULES.

A district school board is primarily local, even though it is a state agency, operating under the administering state law, because it exercises its authority locally rather than statewide, its authority is geographically confined, the ownership and maintenance of its physical resources is local, it deals primarily with local tax revenues to the extent that it controls its own revenue sources, and the duties of employment and supervision of employees and of educating students are local; therefore, a district school board member is not a state officer and a proceeding in the nature of quo warranto which involves a board member is to be commenced in the circuit court (GCR 1963, 715.1).

Appeal from Ingham, James T. Kallman, J. Submitted March 8, 1976, at Lansing. (Docket No. 25410.) Decided June 24, 1976.

Complaint by J. C. Williams against the Lansing Board of Education and its individual members for declaratory and injunctive relief concerning his removal from the board and the appointment of another to fill the vacancy. The circuit court declared the statute under which plaintiff was removed to be unconstitutional, but found it had no jurisdiction to determine who has the right to sit on the board. Plaintiff appeals. Affirmed as to the unconstitutionality of the statute, and remanded for entry of appropriate judgment for plaintiff.

*Vande Bunte, Sexton & Feintuch (Zolton A. Ferency,* of counsel), for plaintiff.

*Dunnings & Canady, P. C.,* for defendants.

Before: M. J. KELLY, P. J., and BRONSON and W. R. PETERSON,* JJ.

W. R. PETERSON, J. This case involves the constitutionality of Section 492 of the School Code[1] requiring ownership of taxable property within the school district as a condition of eligibility to office as a school board member, title to a seat on defendant board of education contested by non-propertied plaintiff and propertied defendant Woods, and the question of what procedural means are appropriate to resolve the controversy.

Plaintiff was elected to defendant board January 11, 1973 for a term of six years. He was then fully qualified for the office. He remains so qualified except that in October of 1974 he ceased to own taxable property within the district, an event of which he promptly notified defendant board and which seemingly created an automatic vacancy in the office.[2] Defendant board took legal advice, concluded that plaintiff's seat was vacant, passed a formal resolution to that effect, and subsequently appointed defendant Woods thereto.[3]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 340.492; MSA 15.3492: "Any school elector in a school district, who is the owner in his own right of property which is assessed for taxes, shall be eligible to election or appointment to office in such school district:"

[2] MCLA 340.494; MSA 15.3494: "The office of a member of the board shall become vacant immediately * * * upon any of the following events: * * * Eighth, His ceasing to possess the legal qualifications for holding office."

[3] In April of 1975, a school election was held at which Woods was elected to fill the balance of plaintiff's unexpired term.

If § 492 of the School Code is unconstitutional, plaintiff has never ceased to be a member of defendant board and the appointment of defendant Woods was without lawful authority; if § 492 is constitutional, plaintiff's seat became vacant and defendant Woods is lawfully his successor.

Both parties acknowledge that *Turner v Fouche,* 396 US 346; 90 S Ct 532; 24 L Ed 2d 567 (1970), appears to be dispositive of the constitutional issue. In *Turner,* a provision of Georgia law requiring that members of county boards of education be freeholders was held to violate the Equal Protection Clause of the 14th Amendment of the United States Constitution. The property ownership requirement, said the Court, did not pass "the traditional test for a denial of equal protection: whether the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective", 396 US 346, 362, adding that "it seems impossible to discern any interest the qualification can serve". *Id.,* 363.

Defendants point to *Schweitzer v Plymouth City Clerk,* 381 Mich 485; 164 NW2d 35 (1969), *cert den* 397 US 906; 90 S Ct 896; 25 L Ed 2d 86 (1970), however, as casting doubt on the applicability of *Turner. Schweitzer* involved a requirement of property ownership for city office which was found constitutional by the Michigan Supreme Court prior to the decision in *Turner,* and, respecting which, the United States Supreme Court denied certiorari only a month after its decision in *Turner.*

We cannot treat a denial of certiorari as precedent, let alone as a disavowal of a month-old decision. And we think *Schweitzer,* in any event, is distinguishable from the *Turner* treatment of a state statute in that *Schweitzer* involved a munici-

pal charter provision which was the product of local elector choice.

We concur with the conclusion of the trial judge that § 492 of the School Code is indistinguishable from the freeholder provision of the Georgia statute in purpose and effect, is irrelevant to the capability or educational concern of a prospective board member, and is thus violative of the 14th Amendment of the United States Constitution.

It would seem that the resolution of the constitutional question and the restoration of plaintiff to office should have been simple and expeditious. Unfortunately, that has not proved to be the case. On December 12, 1974, plaintiff commenced action in Ingham County Circuit Court seeking declaratory and injunctive relief, *viz.,* declarations that § 492 was unconstitutional and that the appointment of defendant Woods was invalid, and an order restraining defendant board from implementing either § 492 or its resolution declaring the seat vacant.

To Judge Kallman, it was tolerably clear that what plaintiff wanted was to have his office back and that the proper way to determine his right thereto was by a proceeding in the nature of quo warranto.[4] Judgment on the pleadings was accordingly granted to defendants. Plaintiff's effort to proceed by quo warranto in this Court was then summarily aborted by treatment as an appeal, with the matter remanded to Judge Kallman who was ordered to try plaintiff's original complaint on the authority of *Molinaro v Driver,* 364 Mich 341; 111 NW2d 50 (1961). He did, finding § 492 unconstitutional and the appointment of defendant Woods invalid.

This done, however, and plaintiff having had his

---

[4] *See* MCLA 600.4501 *et seq.;* MSA 27A.4501 *et seq.,* GCR 1963, 715.

declaration of rights, by what procedural means could he be restored to office? Not by injunction. Judge Kallman was right in the first place: the remedy is by proceeding in the nature of quo warranto. It is, on one side of the coin, the exclusive remedy to try title to office, *Layle v Adjutant General of Michigan,* 384 Mich 638; 186 NW2d 559 (1971); on the reverse, there is no recourse to injunctive relief save where there is no other adequate remedy. *St. Joseph Twp v Berrien County Supervisors,* 363 Mich 295; 109 NW2d 826 (1961).

This action, unlike *Molinaro,* involves a dispute as to which of two rival claimants is entitled to a public office. *Molinaro,* on the other hand, involved the validity of a resolution of a retirement board retiring an officer who held an office, lawfully assumed, for which there was no rival claimant. We thus misapplied *Molinaro* in an effort to expedite the case and only prolonged it.

It should be no barrier to merited relief that the claimant has mislabeled or misapprehended his remedy. Thus GCR 1963, 13:

"These rules are to be construed to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequences of any error or defect in the proceedings which does not affect the substantial rights of the parties."

and GCR 1963, 110.3:

"Technical Forms Abolished. All common counts, general issues, demurrers, pleas, fictions and technical forms of action or pleading, are abolished. The form and sufficiency of all motions and pleadings shall be determined by these rules, construed and enforced to secure a just, speedy, and inexpensive determination of all controversies on their merits."

as to which the committee comment said:

"It is to be understood that the abolition of the forms of action does not abolish the remedies thereunder. If a cause of action is stated in the complaint showing the pleader entitled to relief, the appropriate substantive remedy will remain, no matter if the action is labeled as to form or is merely designated as a civil action. This is especially true in regard to actions of mandamus, quo warranto, and certiorari, the names of which were preserved in the statute above cited."

And this concern for substance over form was not unknown prior to the adoption of the 1963 General Court Rules, *e.g., Heidelmeyer v Village of Oakwood,* 222 Mich 331; 192 NW 565 (1923).

Nonetheless, there are important aspects of quo warranto proceedings which distinguish them from other civil proceedings. Thus the court in which the remedy is sought will depend on the office involved; and, as in *Heidelmeyer,* the standing of a private party to seek the remedy is dependent, where it exists, on leave granted.

GCR 1963, 715 in part reads as follows:

".1 Jurisdiction.
(1) All actions for quo warranto against any person who usurps, intrudes into, or unlawfully holds or exercises any state office, and against any state officer who does or suffers any act which, by the provisions of law, works a forfeiture of his office, shall be commenced in the Court of Appeals.
(2) All other actions for quo warranto shall be brought in the circuit courts."

Thus, if a school board member is a state officer, an action in the nature of quo warranto pertaining thereto must be brought in this Court; if not, the action must originate, like other civil actions, in

the circuit court. There is no doubt that public schools are state agencies, *Public Schools of Battle Creek v Kennedy,* 245 Mich 585; 223 NW 359 (1929); *Governor v State Treasurer,* 389 Mich 1; 203 NW2d 457 (1972), but perhaps a more apt description is that in *MacQueen v City Commission of Port Huron,* 194 Mich 328, 336; 160 NW 627 (1916), referring to a "school system, to be administered throughout the State under State laws by *local State agencies".* (Emphasis added.)

A number of cases, analyzed carefully in *Young v Detroit City Clerk,* 389 Mich 333;207 NW2d 126 (1973), have dealt with the question of the eligibility of members of the Legislature to other office because of the disqualifications contained in Const 1963, art 4, § 9 and prior constitutions.[5] In *Young, supra,* p 347, the Court said:

"Thus, it is clear that the distinction of state and local offices depended on not whether an official had one or more state duties, but whether the office is primarily local or state on the basis of the overall duties."

In applying the test, the Court cited with approval *Weza v Auditor General,* 297 Mich 686; 298 NW 368 (1941), finding the office of county school commissioner to be a local office to which a member of the Legislature would be eligible,[6] and overruled *O'Brien v City of Detroit Election Commission,* 383 Mich 707; 179 NW2d 19 (1970), which had held the office of city treasurer to be a state office because it involved collection of school taxes and schools were state agencies.

Perhaps more pertinent is *Schobert v Inter-*

---

[5] Const 1850, art 4, § 18; Const 1908, art 5, § 7.

[6] But holding that the two offices were incompatible so that acceptance of the school office vacated the legislative seat.

*County Drainage Board,* 342 Mich 270; 69 NW2d 814 (1955), involving mandamus which, as with quo warranto, has been historically withheld from the circuit courts in matters involving state officers.[7] From *Schobert,* and the cases cited therein, it appears that the purpose of this limitation on the common law powers of the circuit courts to issue extraordinary writs is twofold: to place in the higher court for expeditious hearing those questions of sovereign prerogative or the interest of the state at large, and to avoid inconvenience in the administration of state government by permitting trial of such questions at the seat of government where the most state offices and departments are centered. The circuit courts, on the other hand, retain the power to use such writ or equivalent civil remedies where local witnesses will be heard and local questions and issues resolved notwithstanding that general state law or interest is involved.

In a sense, we think that, in the language of *Young, supra,* school boards are "primarily local", and that the *MacQueen* description of school districts as *"local* State agencies" is accurate. Although they are state agencies, operating under and administering state law, they exercise their duties locally rather than statewide; their authority is geographically confined; the ownership and maintenance of their physical resources is local; to the extent that they control their own revenue sources, they deal primarily with local tax revenues, and locally face problems of operating and building millage; and the duties of employment and supervision of personnel and of educating students are all local. We are satisfied that school board members are not state officers and that

_____

[7] GCR 1963, 714; Court Rule No. 43 (1945); CL 1915, 13439.

proceedings in the nature of quo warranto involving them are to be commenced in the circuit courts.

While hesitant to oust the circuit judge of his discretion under GCR 1963, 715.2(2) to grant the prerequisite leave to bring an action in the nature of quo warranto, in the interest of speedy termination of this matter we summarily deem it granted[8] and remand for entry of appropriate judgment for the plaintiff.

---

[8] And we note his expressed and correct belief that quo warranto would be appropriate.