McKEE v DEPARTMENT OF SOCIAL SERVICES

Docket No. 62645. Submitted October 12, 1983, at Lansing.—Decided January 3, 1984. Leave to appeal applied for.

Gary McKee and Lucinda Johndro were individually denied Aid to Families With Dependent Children benefits by the Michigan Department of Social Services because each of them owned an interest in nonhomestead real property having a market value in excess of the amount permitted by the applicable statute. McKee and Johndro filed an action in Bay Circuit Court against the Department of Social Services appealing the denial of AFDC benefits on behalf of themselves and the class of persons similarly situated. The class was never certified. The court, John X. Theiler, J., affirmed the decisions of the Department of Social Services. The plaintiffs appealed. *Held:*

The trial court's order upholding the decisions of the Department of Social Services should be affirmed. The decisions of the department are not violative of Michigan statutory law or administrative regulations and do not deny the plaintiffs, or those similarly situated, of procedural or substantive due process. Nonhomestead real property which has been listed for sale is available for purposes of determining eligibility for Aid to Families With Dependent Children benefits even though it remains unsold due to a depressed market situation. Because the department's decision was not based upon any inaccurate presumptions regarding market conditions and because there is no dispute that each of the plaintiffs' properties could readily be sold for some amount in excess of the statutory ceiling, the plaintiffs' procedural due process rights were not violated. Because the classification here is not patently arbitrary or utterly lacking in rational justification, it does not violate substantive due process.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 79 Am Jur 2d, Welfare Laws §§ 15, 57.
[2] 16A Am Jur 2d, Constitutional Law § 816 *et seq.*
   79 Am Jur 2d, Welfare Laws § 4.

1. SOCIAL SECURITY — AID TO FAMILIES WITH DEPENDENT CHILDREN —
   NONHOMESTEAD REAL PROPERTY.

   Nonhomestead real property which has been listed for sale is
   available for purposes of determining eligibility for Aid to
   Families With Dependent Children benefits even though it
   remains unsold due to a depressed market situation.

2. CONSTITUTIONAL LAW — SUBSTANTIVE DUE PROCESS.

   A court, in determining whether or not classifications of persons
   under social welfare programs violate substantive due process,
   should inquire whether the classification in question is patently
   arbitrary or utterly lacking in rational justification.

*Michael Malkovich,* Legal Services of Eastern
Michigan, for plaintiffs.

*Frank J. Kelley,* Attorney Genral, *Louis J. Ca-
ruso,* Solicitor General, and *Janis Meija* and *Erica
Weiss Marsden,* Assistants Attorney General, for
defendant.

Before: DANHOF, C.J., and BRONSON and W. R.
PETERSON,* JJ.

PER CURIAM. Plaintiffs appeal as of right from
the trial court's order affirming two separate ad-
ministrative decisions of the defendant, Michigan
Department of Social Services (DSS), denying each
plaintiff benefits under this state's Aid to Families
With Dependent Children (AFDC) program. The
basis for defendant's decision was that each plain-
tiff owned interests in nonhomestead real property
having a market value in excess of the amount
permitted by MCL 400.56g(1)(a); MSA
16.456(7)(1)(a). On appeal, each plaintiff raises sev-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

eral issues, none of which require reversal.[1]

First, plaintiffs cite federal regulations, 45 CFR 233.20(a)(3)(ii)(D) for the proposition that their real estate interests are not "available for current use", because they have not been liquidated and because they cannot readily be converted into cash. An identical argument has been addressed and rejected in this Court's recent decision, *Kilpatrick v Dep't of Social Services,* 126 Mich App 559; 337 NW2d 576 (1983). In *Kilpatrick,* this Court held that an AFDC applicant's interest in a sawmill was "available" within the meaning of the above-cited regulation, so long as there was no legal impediment to immediate sale of that interest on the open market. *Kilpatrick, supra,* pp 566-567, citing *Kanda v Chang,* 475 F Supp 368 (D Hawaii, 1979). The Court held that, even though real property which has been listed for sale remains unsold due to a depressed market situation, that property still remains "available" for AFDC purposes. Although the property may not readily be sold at the applicant's desired price, if it can be priced for quick sale and the proceeds under such conditions still exceed the statutory ceiling, AFDC benefits are properly denied. *Kilpatrick, supra.*

---

[1] We reject defendant's threshold argument that this matter has been rendered moot by the sale of plaintiff McKee's property. Even if McKee's claim might have been rendered moot (a question which we do not address, given the uncertainties created by the possibility of a DSS action to recoup previously disbursed benefits), it is undisputed that the claim of co-plaintiff Johndro is not moot. Accordingly, this Court must still address the substance of the issues presented. We note further that the questions raised in the present case are of great importance to the public, and the present dispute is likely to recur on numerous occasions. As a result, we would still be inclined to review the issues presented, even if both of the individual plaintiffs had sold their properties before the filing of this appeal. See *Milford v People's Community Hospital Authority,* 380 Mich 49; 155 NW2d 835 (1968); *Hernandez v Consumers Power Co,* 51 Mich App 288; 214 NW2d 846 (1974); *Regents of University of Michigan v State of Michigan,* 47 Mich App 23; 208 NW2d 871 (1973), *modified on other grounds* 395 Mich 52; 235 NW2d 1 (1975).

Plaintiffs attempt to distinguish *Kilpatrick, supra,* on the basis that the sawmill involved in that case was an income-producing asset rather than a residence. According to plaintiffs, the sawmill always had the potential of producing income for the AFDC applicant's family, whereas plaintiffs could not anticipate any comparable flow of income from their interests in former residences. We find no significance in this distinction. The decision in *Kilpatrick* did not turn upon the type of property involved, nor did it depend upon a showing that the AFDC applicant may have received a flow of income as the result of holding an interest in a particular type of real property. Instead, the decision in that case was based upon the principle that the DSS must consider "available" any resource which may legally be sold for measurable value, even if the determined value is the result of depressed market conditions or a distress sale:

"Pursuant to DSS policy, the determination of an AFDC applicant's equity value in non-home realty begins with an assessment of the property's fair market value. * * * It must be assumed that the * * * assignment of fair market value to plaintiff's sawmill took into consideration the depressed market situation. There was no legal impediment to the sale of the sawmill". *Kilpatrick, supra,* pp 566-567.

The Court acknowledged that the result may seem unfair to those who may be forced to liquidate their realty interests under conditions of distress but observed that this is a consideration which goes beyond the scope of the AFDC program:

"While plaintiff and her family may, in a very real sense, have been 'needy' * * *, the present system is not designed to respond to persons in their situation, who may be forced to sell property at 'fair market

values' which are, temporarily, significantly low due to economic recession and depression. Absent conflict with federal requirements, the state is free 'to insure that limited welfare funds be spent on behalf of those genuinely incapacitated and most in need'. [Citation omitted.] State response to persons who, like plaintiff, are among the growing ranks of the 'new poor', and who are denied AFDC benefits solely because of their ownership of resources obtained in better economic times, must be a legislative response. Given the present system, judicial response is precluded." *Kilpatrick, supra,* pp 567-568.

Plaintiffs next urge that state law prohibits defendant from considering plaintiffs' properties as "available" resources. Once more, their arguments have been fully addressed and rejected in *Kilpatrick, supra.* Michigan's AFDC program has been implemented through both statutory provisions and administrative regulations. MCL 400.56g(1)(a); MSA 16.456(7)(1)(a) renders a family ineligible for AFDC benefits if it owns property in excess of $2,000. Although the applicable regulation, 1979 AC, R 400.12(10), limits consideration of an applicant's resources to those which are "available in fact for current use", this Court's holding in *Kilpatrick* indicates that a resource need not be liquidated in order to fall within the scope of this regulation. Real property is "available in fact for current use" under this regulation so long as there is no legal impediment to immediate sale of the equity in the open market. *Kilpatrick, supra.* Thus, in the present case, Michigan's regulatory scheme does not prohibit defendant from considering plaintiffs' properties in determining their eligibility.

Plaintiffs' final argument on appeal is that defendant has denied them procedural due process by creating an irrebuttable presumption that their

property can be sold and the proceeds used to support their families. We find no merit in this argument. The presumption that the properties can be sold is neither improper nor violative of due process.

There is no question that the properties involved here—or any real estate, for that matter—could be sold for some price, however depressed that price may have been as the result of market conditions or a distress sale situation. As long as the DSS uses this depressed valuation (rather than a valuation based upon hypothetical or ideal market conditions) in determining eligibility, there has been no improper reliance upon any inaccurate presumption of fact. The DSS has merely denied eligibility based upon a finding that the property could readily be sold for an amount exceeding the statutory ceiling.

This is not a situation in which the DSS has denied eligibility based upon valuations which might have presupposed optimal market conditions. Plaintiffs would have had a stronger argument if DSS has based its denial of benefits upon a valuation which "irrebuttably" presumed more favorable market conditions. Since the DSS's decision in the present case was not based upon any inaccurate presumptions regarding market conditions, and since there is no dispute that each of the plaintiffs' properties could readily be sold for some amount in excess of the statutory ceiling, we conclude that plaintiffs' procedural due process argument must fail.

Defendant properly notes that there has been no denial of substantive due process either. In determining whether or not classifications of persons under social welfare programs violate substantive due process, courts must inquire whether the clas-

sification in question is patently arbitrary or "utterly lacking in rational justification". *Weinberger v Salfi,* 422 US 749; 95 S Ct 2457; 45 L Ed 2d 522 (1975).

In the present case, the applicable federal and state regulations classify potential AFDC recipients according to their ownership of various assets. Those persons, like plaintiffs, who have substantial interests in nonhomestead realty are treated differently from those who have no such interests: The former are denied benefits, whereas the latter may be eligible. The basis for this classification was noted in *Kilpatrick, supra:* The state must ensure that limited welfare funds are spent on behalf of those who are most in need. Persons who own nonhomestead real estate are not so acutely in need of aid for their subsistence as those who are unable to turn to and, if necessary, liquidate such resources. It is apparent that the classification created by governing regulations has at least some rational basis in determining priorities for spending scarce welfare funds. We find this basis sufficient to justify the challenged classification. *Weinberger v Salfi, supra.* There has been no denial of substantive due process.

The trial court's order upholding the DSS's decisions is affirmed.

Affirmed.